**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

**MICHAEL W. MCDONALD,**

**Plaintiffs,**

**v.**

**CORNERSTONE BUILDING BRANDS, INC.,
f/k/a SIMONTON WINDOWS, INC.,
a North Carolina Corporation; and
URBAN MACHINERY CORPORATION,
a Canadian Corporation,**

**Defendants.**

> ELECTRONICALLY
> FILED
> 11/9/2021
> U.S. DISTRICT COURT
> Northern District of WV

**Civil Action No.** 1:21-CV-139
**Judge:** IMK

## COMPLAINT

Plaintiff, Michael W. McDonald, by counsel, hereby states and alleges as follows for his Complaint against the defendants:

### PARTIES

1. At all times relevant hereto, plaintiff, Michael W. McDonald, is and was a resident and citizen of Harrisville, Ritchie County, West Virginia.

2. The defendant, Cornerstone Building Brands, Inc. ("Cornerstone") is a Delaware corporation with its principal office located in Cary, North Carolina. Defendant Cornerstone is and was at all times relevant engaged in the business of window manufacturing operations at its facility located at in Harrisville, Ritchie County, West Virginia. As such, Cornerstone is, and all times relevant herein was, subject to regulation by the Occupational Health and Safety Administration ("OSHA") and was responsible for compliance with all applicable OSHA rules and regulations; West Virginia statutes, rules and regulations; as well as consensus industry safety standards in the operation of its facility in Harrisville, West Virginia.

3.      Defendant Urban Machinery Corporation ("Urban Machinery") is a Canadian corporation with its principal place of business located in Cambridge, Ontario.  At all times relevant hereto, Urban Machinery was in the business of manufacturing, re-manufacturing, modifying and/or altering, fabricating, designing, packaging, labeling, marketing, shipping, selling, servicing and/or distributing automatic welding machines for window manufacturing and applications in the State of West Virginia including, but not limited to, the Urban Welder – BM Sash 4 PT AKS 8000 (Equipment Number PE-WELD0062) at defendant Cornerstone's facility in Harrisville, West Virginia at issue in this case (the "Subject Welder" or "Subject Machine").

## JURISDICTION and VENUE

4.      This Court has original jurisdiction over this civil matter pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and involves citizens of different states.

5.      Defendant Urban Machinery availed itself to the jurisdiction of this Court pursuant to W. Va. Code § 56-3-33 and W. Va. Code § 31D-15-1501(d)(3), by doing, personally and through their agents, the following acts:

  a.    Committing a tortious act within this state by selling and/or delivering a defective product for placement into the West Virginia stream of commerce for ultimate users;

  b.    By manufacturing, testing, selling, distributing, assembling and servicing Urban Machinery products, including the subject Welder, to or for persons, firms and/or corporations in this state *via* its distributors, wholesalers, and brokers. Such Urban Machinery products, including the subject Welder, were used by West Virginia consumers in the ordinary course of commerce and trade;

  c.    By deriving substantial revenues in this state;

  d.    The acts or omissions of the defendants caused injuries to persons in West Virginia, including plaintiff;

    e.    By engaging in the solicitation of activities in West Virginia to promote the sale, consumption, use, maintenance, distribution, assembly and repair of Urban Machinery equipment, including the subject Welder which is the subject of this Complaint; and

    f.    By manufacturing, testing, selling, distributing or assembling Urban Machinery products, including the subject Welder which is the subject of this Complaint, with knowledge or reason to foresee that Urban Machinery products, including the subject Welder, would be shipped in interstate commerce and would reach the market of West Virginia users or consumers.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1931(a) in that the events giving rise to the claims herein took place within the Northern District of West Virginia, specifically near Harrisville, Ritchie County, West Virginia.

7.    Jurisdiction and venue are also proper before this Court pursuant to W. Va. Code§23-4-2(e) in that the events giving rise to this cause of action and/or a substantial portion thereof occurred/arose in Ritchie County, West Virginia; defendants transact and conduct business in the Northern District of West Virginia, and specifically in Ritchie County; defendants caused tortious injury by act(s) and/or omission(s) in the Northern District of West Virginia; and plaintiff is a citizen of West Virginia.

**FACTS**

8.    At all relevant times hereto, plaintiff Michael McDonald was employed by defendant Cornerstone as the operator of the Subject Urban Machinery Welder.

9.    Defendant Urban Machinery, at all times relevant herein, in approximately 2006, manufactured, designed, fabricated, distributed, marketed, packaged, labeled, and/or sold and provided the Subject Welder to defendant Cornerstone. Defendant Cornerstone, at all times relevant herein, owned, maintained, and regularly operated the Subject Welder.

10.     The Subject Welder is/was used to heat weld vinyl pieces together to form window frames.  The perimeter of the machine is protective by a metal fence and by several light curtains. The inside of the machine has a horizontal light curtain that is used as a PSDI ("Presence Sensing Device Initiation) to allow the machine to partially activate in an automatic setting.  The automatic setting allows the machine to automatically adjust itself to different size products that are programmed into a run cycle so that multiple size products can be made during the same run cycle. The employee steps into the work zone of the machine in between operating cycles to retrieve the finished part and place new pieces in to be welded together.  The machine is set to start a new welding cycle only once the employee backs out of all of the light curtains and hits a GO button. The machine will automatically adjust to a new product size once the employee backs out of only the machine's horizonal light curtain.  The machine will instantly stop if any of the protective light curtains are broken during the welding cycle.

11.     In the two (2) to three (3) months prior to November 10, 2019, plaintiff Michael McDonald made complaints to his supervisors and management at defendant Cornerstone that the Subject Welder had been malfunctioning and not operating as designed.  Plaintiff's supervisors and management suggested that plaintiff turn the machine off and back on as a potential solution. Maintenance did not inspect or troubleshoot the issue, as there were no maintenance personnel at defendant Cornerstone's Harrisville facility during this time-period.

12.     On November 10, 2019, pursuant to standard operating procedures, plaintiff Michael McDonald, during normal production, retrieved a finished part when another employee of defendant Cornerstone attempted to get his attention from the back side of the Subject Welder beyond the protective fence.  Plaintiff turned to his side when the subject Welder's parts/clamps, without warning or indication, converged towards each other while plaintiff was still inside the

machine.   Plaintiff was caught in the moveable arms of the machine and suffered serious, permanent, and disabling crushing injuries to his chest, ribs, shoulder, arm, and neck.   Plaintiff was wedged between the machine's fixtures on each side of his shoulders essentially sandwiched. The machine bear hugged plaintiff almost instantly without any time to react.   The Subject Machine squeezed plaintiff for approximately 30 seconds before releasing him.   A co-worker assisted plaintiff out of the machine.

13.    The subject incident was reported to OSHA, and OSHA conducted a comprehensive inspection and investigation of defendant Cornerstone and the Subject Urban Machinery Welder as well as other Urban Machinery Welders at defendant Cornerstone's Pennsboro facility.   As a result of its investigation and inspection, OSHA issued a Serious Citation to defendant Cornerstone for violating 1910.212(a)(3)(ii), entitled "Machinery and Machine Guarding".   The subject Citation directly related to the subject Welder and Incident states as follows:

> 29 CFR 1910.212(a)(3)(ii): Point of operation guards were not designed and constructed as to prevent the operator from having any part of their body in the danger zone during the operating cycle:
>
> (a)    Harrisville Plant:  On or about November 10, 2019, an Urban Welder (Equipment Number PE-WELD0062) was not equipped with a method of machine guarding that would prevent the operator from passing completely through the machine's protective light curtain and allow the machine's parts to automatically move while the operator is still in the hazard zone.

OSHA also issued the same citation for two (2) identical/similar Urban welders at defendant Cornerstone's Pennsboro Plant.

14.    OSHA also made the following findings as a result of its investigation:

- A gap of twelve (12) inches existed between the back side of the light curtain and the frame of the machine.   This allowed the operator to step beyond and pass completely through the protective light curtain to the other side causing the

unintended movement of the machine's clamps in on the operator. An operator and/or employee also had the ability to be in the area where the two sides of the machine automatically move back and forth on rails.

- The type of protective light curtain used is referred to as a PSDI (Presence Sensing Device Initiation) control that if used correctly, is an approved method of machine guarding.  However, the operator had the ability on the Subject Machine/Welder to pass through the protective field of the horizontal light curtain while still in the danger zone of where the machine's parts converge inwards.  This is in violation of ANSI B11.19-2010, Performance Criteria for Safeguarding, section 6.8.4.1(c), which states that when using PSDI it shall not be possible for an individual to enter, pass through, and become clear of the presence-sensing device sensing field.

- The Subject Welder's light curtains were not tested prior to the Subject Incident.

- No maintenance had been performed on the Subject Welder during the year immediately preceding the Subject Incident.

- The point of operation guards were not designed and constructed as to prevent the operator from having any part of their body in the danger zone during the operating cycle creating a specific unsafe working condition likely to result in serious injury or death.

- There were no guarding or warning signs in place to prevent employees from going past the light curtain.

- The PSDI was not designed correctly in that it allowed a person to pass through the field while still in a hazard zone which violates ANSI B11.19 Section 6.8.4.1.

- The Urban welders at defendant Cornerstone's Pennsboro location had magnetic banners that stretched across the gap between the two moving sections of the welders that stated, "RESTRICTED AREA."  Site management admitted to OSHA that these banners were installed approximately one (1) year prior to the Subject Incident at the Pennsboro location as part of a machine guarding initiative but had not been installed yet at the Harrisville plant.  While not an appropriate guard, these banners provided a clear warning to the operator not to enter the area.

- Following the Subject Incident and prior to OSHA's inspection, defendant Cornerstone had installed additional warning signs and floor markings in and around the subject Welder but had not installed any additional guarding.

- One feasible and acceptable method of abatement would be to follow ANSI B11.19-2010 Performance Criteria for Safeguarding, section 6.8.4.1(c), which states that when using PSDI, it shall not be possible for an individual to enter, pass through, and become clear of the presence-sensing device sensing field.  The hazard

can be abated by installing additional light curtains or safety activated mats beyond the horizonal light curtain in place.

15.     Defendant Cornerstone did not contest the OSHA Citation and paid the total amount proposed through an Informal Settlement Agreement.

16.     Following the incident, as part of the OSHA abatement procedures, defendant Cornerstone instituted an immediate Safety Stand-Down to implement and train a new procedure to step in and out of the welder to load and unload vinyl in the welder.  Defendant Cornerstone marked the floor with yellow and red tape as an operator awareness barrier as part of the training process.  Defendant Cornerstone reviewed the current standard work instructions and created a "Red Safety Alert" for all associates/employees to sign off on updated procedures with barrier awareness.  Defendant Cornerstone further requested a meeting with defendant Urban Machinery to review the total operation of the machine including factory installed safety systems.  Defendant Cornerstone created a safety team to determine a plan for all Urban Machinery welders to fully eliminate this serious hazard; light curtain enhancements; and mechanical changes to the process of operating the welding equipment to include push button activation to sequence to next size profiles with the operator outside the welding operation.

17.     Defendant Urban Machinery's product manual – literature for the Subject Welder does not provide any warning or instruction with respect to this specific serious hazard.  In fact, with respect to the Subject Welder's safety devices and specifically the light curtains/barriers, defendant Urban Machinery's manual – literature states that the machine stops in the event the barriers are interrupted during operation and stops and puts off a loud signal if the barriers are interrupted during the welding process.

18.    Mr. McDonald's injuries were so severe that he was admitted to the hospital for four (4) days following the incident.  Mr. McDonald also suffers from permanent psychological injuries as a result of the Subject Incident, including Post-Traumatic Stress Disorder.

19.    As a direct and proximate result of the actions, omissions, and conduct of the defendant, on and before November 10, 2019, plaintiff Michael McDonald sustained the serious and permanently disabling injuries described herein, and he has further sustained the following past, present, and future damages:

      a.    extreme physical pain and suffering;

      b.    extreme mental anguish and suffering;

      c.    permanent physical impairment;

      d.    permanent psychological impairment;

      e.    lost wages and benefits;

      f.    loss of future earning capacity and benefits;

      g.    loss of capacity to enjoy life;

      h.    medical expenses past and future;

      i.    permanent scarring and disfigurement; and

      j.    annoyance and inconvenience.

### COUNT I
### DELIBERATE INTENT - W. VA. CODE § 23-4-2(d)(2)(B)
### DEFENDANT CORNERSTONE BUILDING BRANDS, INC.

20.    The plaintiff repeats and incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

21.    On and prior to November 10, 2019, defendant Cornerstone Building Brands violated W. Va. Code § 23-4-2(d)(2)(B), in that:

    i.      A specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

    ii.     Defendant, Cornerstone, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition(s) and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition(s);

    iii.    That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of defendant Cornerstone;

    iv.    That notwithstanding the existence of the facts set forth in subparagraphs (I) through (III), inclusive, of this paragraph, Defendant Cornerstone, through its management and plaintiff's supervisors, nevertheless intentionally thereafter exposed plaintiff Michael McDonald to the specific unsafe working condition(s); and

    v.     That Michael McDonald suffered serious compensable injury as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition(s).

22.     As of the filing of this Complaint, plaintiff has not been issued a final award of whole person impairment for his injuries sustained in the Subject Incident. Dr. Syam Stoll recently conducted an Independent Medical Exam on Mr. McDonald on October 21, 2021 and determined that he sustained 19% whole person impairment for his compensable injuries, which would easily satisfy the 13% whole person impairment threshold required by the West Virginia Deliberate Intent Statute, W. Va. Code 23-4-2. Dr. Stoll did not issue any whole person impairment rating for Mr. McDonald's psychological injuries, as he is not qualified to render such opinion. Should plaintiff not receive a final award of 13% or greater, plaintiff is prepared to seek leave to file a Declaratory Judgment Action asserting that this provision in the West Virginia Deliberate Intent Statute is unconstitutional.

23.     In support of the plaintiff's allegations as to the existence of specific unsafe working conditions and violations of relevant safety statutes, regulations, and industry safety standards as a contributing cause of plaintiff's injuries, plaintiff attaches the verified statement of a workplace safety consultant/expert, pursuant to W. Va. Code 23-4-2(d)(2)(C)(i).

24.     As a direct and proximate result of defendant Cornerstone Building Brands' actions and omissions, on and prior to November 10, 2019, the plaintiff, Michael McDonald, sustained severe and permanent injuries and damages described herein.

## COUNT II
## STRICT PRODUCT LIABILITY
## DEFENDANT URBAN MACHINERY CORPORATION

25.     The plaintiff repeats and incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

26.     Defendant Urban Machinery designed, manufactured assembled, rebuilt, modernized, marketed, labeled, packaged, sold, serviced, distributed and/or placed into the stream of commerce the subject Urban Welder, which was used by the plaintiff and defendant Cornerstone in a manner for which it was designed, manufactured, and marketed by defendant Urban Machinery.

27.     The subject Urban Welder used by plaintiff was defective from the time it was designed, manufactured, and marketed until plaintiff Michael McDonald was severely injured while operating the subject Urban Welder, by virtue of its defective and/or not reasonably safe design, when used as intended, in that it did not contain adequate, effective and reasonably safe guarding.  Specifically, there is a twelve (12) inch gap between the back of the light curtain and the frame of the machine with no guard, barrier or warning which would allow a person to enter the danger zone during operation.  The PSDI (Presence Sensing Device Initiation) was not

designed correctly in that it allowed a person to pass through the field while still in a hazard zone creating a foreseeable incident as the subject Welder will think the operator exited the machine which causes the machine to converge in on the operator, rather than a reasonable alternative design that requires additional light curtains or safety activated mats beyond the horizonal light curtain in place which would make it impossible for a person to enter, pass through, and become clear of the presence-sensing device sensing field.  The Subject Welder's defective design violates ANSI B11.19-2010 Performance Criteria for Safeguarding, section 6.8.4.1(c).

28.     At the time that the Subject Welder left the control of defendant Urban Machinery, safer alternative designs existed which would have made the welder safer and would have prevented allowing a person to pass through the PSDI field while still in a hazard zone causing the machine to converge in on the operator without substantially impairing the Subject Urban Welder's utility.  These safer alternative designs were economically and technologically feasible at all times relevant.

29.     The Subject Urban Welder was further rendered not reasonably safe because an adequate warning about the hazards and potential hazards with operating and/or using the Subject Urban Welder with these aforementioned defects, including the Subject Urban Welder's susceptibility to converge in on the operator when he/she passes through the unguarded twelve (12) inch gap and/or PSDI field, was not provided to consumers, either at or after the time that the Subject Urban Welder left defendant Urban Machinery's control.  In fact, the opposite warning was provided by defendant Urban Machinery in its operations manual – product literature that the machine would stop in the event the light curtain barriers are interrupted during operation creating a dangerous situation.

11

30.     A reasonably prudent manufacturer should have included adequate warnings about the hazards with operating and/or using the Subject Urban Welder with defects as described above at the time the product was made.

31.     Users of the Urban Welders, including the subject Urban Welder, such as Michael McDonald, should not have been expected to know of the characteristics of the Subject defective Urban Welder that had an inadvertent potential to converge in on the operator because of its defective design and inadequate warnings and cause injuries as were suffered by Michael McDonald.

32.     As a direct and proximate result of the defective design associated with the foreseeable use and operation of the Subject Urban Welder, and defendant Urban Machinery's failure to warn plaintiff of the Subject Urban Welder's defect, the defendant, Urban Machinery, is strictly liable to the plaintiff for the injuries and damages described herein.

**COUNT III**
**BREACH OF WARRANTY**
**DEFENDANT URBAN MACHINERY CORPORATION**

33.     The plaintiff repeats and incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

34.     Defendant Urban Machinery, at all times material hereto, by and through the sale of the Subject Urban Welder, expressly and impliedly warranted to users through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material, to all prospective consumers and the public generally, including plaintiff, that the Subject Urban Welder, which the defendant designed, manufactured, assembled, rebuilt, modernized, sold, serviced, marketed, labeled, and/or distributed was of such quality and reasonably fit for the purpose of serving as a safe welder.

35.     Defendant Urban Machinery breached its express and implied warranties of fitness and merchantability by defectively designing, manufacturing, assembling, building, modernizing, selling, servicing, marketing, labeling, and/or distributing defective and/or not reasonably safe Urban Welders, including the Subject Urban Welder.  At the time of the events giving rise to this cause of action, the Subject Urban Welder was not reasonably safe for the use to which it was intended as reflected throughout the defendant's actions, representations, promises, affirmations, promotions, product literature, photographs and promotional materials.

36.     Plaintiff Michael McDonald made use of the Subject Urban Welder as alleged herein, and relied on the express and implied warranties made by the defendant through its actions, representations, promises, affirmations, promotions, product literature, photographs, and promotional material that accompanied the Subject Urban Welder.

37.     Defendant Urban Machinery further breached its express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including plaintiff, concerning the dangerous characteristics, manufacturer's labels, warnings or instructions of the Subject Urban Welder when used in a reasonably foreseeable manner.

38.     As a direct and proximate result of defendant Urban Machinery's breach of warranties arising out of the sale and marketing of the Subject Urban Welder, plaintiff Michael McDonald sustained the injuries and damages described herein.

<u>**COUNT IV**</u>
**NEGLIGENCE**
**DEFENDANT URBAN MACHINERY CORPORATION**

39.     The plaintiff repeats and incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

40.     Defendant Urban Machinery owes a duty of care to those individuals who use its products in a way that is reasonably foreseeable to defendant, such as plaintiff Michael McDonald did on November 10, 2019.  Defendant owes these individuals a duty to use reasonable care in manufacturing, re-manufacturing, modifying and/or altering, fabricating, designing, packaging, labeling, shipping, selling, servicing, and/or distributing Urban Welders, and to protect them from unreasonable harm in the ordinary and foreseeable use of their products.

41.     Defendant Urban Machinery breached this duty and was negligent in the following acts or omissions:

    a.    the defendant negligently manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, labeled, shipped, sold, serviced, and/or distributed the Subject Urban Welder in such condition that it failed to perform in the manner for which it was intended;

    b.    the defendant negligently manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, labeled, shipped, sold, serviced, and/or distributed the Subject Urban Welder in a manner so that it could not be operated in a safe manner;

    c.    the defendant negligently caused to place into the stream of commerce the Subject Urban Welder in a manner so eminently dangerous and inherently defective that users of the Subject Urban Welder could not appreciate the dangers associated with its use; and

    d.    the defendant failed to make reasonable inspections and tests, and failed to instruct, warn, and/or follow reasonable quality control procedures to discover the defects, dangers, and hazards presented by the Subject Urban Welder which the defendant manufactured, re-manufactured, modified, and/or altered, fabricated, designed, packaged, labeled, shipped, sold, serviced, and/or distributed.

42.     As a direct and proximate result of the defendant Urban Machinery's negligence, plaintiff Michael McDonald sustained the injuries and damages described herein.

WHEREFORE, the plaintiff, Michael McDonald, demands judgment against the defendants for:

    a.)    an amount of compensatory damages determined by a jury according to the laws of the State of West Virginia;

    b.)    an amount of punitive damages for Counts II through IV determined by a jury according to the laws of the State of West Virginia;

    c.)    costs and attorney fees expended in prosecution of this matter;

    d.)    pre-judgment and post-judgment interest as provided under the law; and

    e.)    any and all other relief to which the Court deems plaintiff is entitled.

**PLAINTIFF DEMANDS A JURY TRIAL.**

MICHAEL MCDONALD,

By Counsel,

*/s/ J. Ryan Stewart*
J. Ryan Stewart (WVSB #10796)
BAILEY JAVINS & CARTER, L.C.
213 Hale Street
Charleston, West Virginia 25301
Phone: (304) 345-0346
rstewart@bjc4u.com